# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

HELEN TICKANEN, BARBARA
SCHNEIDER AND JOHN THEURICH,

        PLAINTIFFS,

v.                                             CASE NO. 05-CV-935

HARRIS & HARRIS, LTD.,

        DEFENDANT.

## DECISION AND ORDER GRANTING
## MOTION TO COMPEL ARBITRATION

Plaintiffs, Helen Tickanen and John Theurich, filed a complaint against Defendant, Harris & Harris, Ltd. ("Harris") alleging a violation of Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), on September 1, 2005. Specifically, plaintiffs allege Harris had sent dunning letters to plaintiffs identifying the creditor incorrectly. Harris answered on September 26, 2005; however, this court granted plaintiff's Motion to Amend Complaint, in which to add another plaintiff. On March 22, 2006, plaintiffs filed an Amended Complaint and added Barbara Schneider. In response, Harris has filed a Motion to Compel Arbitration against plaintiffs, Barbara Schneider ("Schneider") and Helen Tickanen ("Tickanen") (collectively "plaintiffs"). Harris' motion does not include plaintiff John Theurich. The parties have consented to the exercise of full jurisdiction by a magistrate judge.

### FACTUAL SUMMARY

Harris submits that both plaintiffs agreed to resolve any disputes with their credit card holder, Boston Store, by means of arbitration. (Def.'s Mot. Compel Arbitration, 1.) Plaintiffs

initially filled out applications for Boston Store Credit cards: Tickanen on Januray 1, 1989 and Schneider on July 31, 1999. (Jasinski Aff. ¶¶ 10-11.) According to store policy, plaintiffs received a copy of the agreement they were bound to by signing the application. (Jasinski Aff. ¶ 5.) Subsequently, the agreement was changed to add an arbitration provision. (Jasinski Aff. ¶ 9.) Notices were inserted in monthly statements between August 16, 1999 – September 15, 1999. Id. For cardholders not receiving a statement during that time period, notices were sent via direct mail. Id. Neither Tickanen nor Schneider's account records with Boston Store have any notation that the notice was returned as undeliverable. (Jasinksi Aff. ¶ 16.)

The Notice also stated "**unless you notify the Card Issuer…that you do not agree to accept the changes in the terms contained in this notice, these changes will become effective for your Account on October 15, 1999**." (Jasinski Aff. ¶ 9; Ex. B, Ex. 3, 2.) (emphasis in original). Furthermore, the notice stated "even if you properly complete and mail the enclosed post card to the Card Issuer, your purchase using your Account at any time on or after the Effective Date will be your agreement to accept the changes." Id. Plaintiffs continued to use their credit cards, thereby accepting the terms. (Jasinski Aff. ¶ 16.)

In 2003, National Bank of Great Lakes sold and assigned Boston Store accounts to Household Bank (SB), N.A. (Jasinski Aff. ¶ 7.) Household Bank (SB), N.A.'s successor in interest is HSBC Bank Nevada, N.A. ("HSBC"); HSBC became the issuer of Boston Store credit cards. (Jasinksi Aff. ¶¶ 7-8.) Cardholders with existing balances were sent a notification in their monthly statements to inform them of the change. (Jasinski Aff. ¶ 12.) Cardholders not receiving a statement were sent a notification via direct mail. Id. Neither Tickanen nor Schneider's account records with Boston Store have any notation that notification was returned as undeliverable. (Jasinski Aff. ¶ 16.) Under HSBC's new agreement, HSBC could assign its rights under the agreement without notice to credit card holders. (Jasinski Aff. ¶ 15.)

Plaintiffs accounts were untimely closed and assigned to Harris. (Jasinski Aff. ¶ 18-19.) Therefore, Harris argues that Schneider and Tickanen must arbitrate their claims against Harris, a non-signatory to the agreement, because they agreed to the arbitration provision and the provision was part of a larger agreement, which was subsequently assigned to Harris.

## MOTION TO CITE ADDITIONAL AUTHORITY

Harris submitted Motion For Leave to Cite Additional Authority, citing Johnston v. Arrow Financial Services, LLC, No. 06-0013, 2006 WL 2710663, *3 (N.D. Ill. Sept. 15, 2006). Johnston was decided after Harris submitted its Motion to Compel Arbitration. Since the court is able to take judicial notice of Johnston, the motion will be granted.

## MOTION TO COMPEL ARBITRATION STANDARD

Motions to compel arbitration are reviewed under a summary judgment standard as set forth in Federal Rules of Civil Procedure 56(c). Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir. 1980)); Trott v. Paciolla, 748 F. Supp. 305, 308 (E.D. Pa. 1990). "[T]he movant under [9 USC § 4] would have to provide sufficient evidence in support of their claims such that a reasonable jury could return a verdict for them under applicable law." Topf v. Warnaco, Inc., 942 F. Supp. 762, 766 (D. Conn. 1996). The court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Versarge v. Township of Clinton N.J., 984 F.2d 1359, 1361 (3d Cir. 1993).

## FEDERAL ARBITRATION ACT

Under the Federal Arbitration Act ("FAA"), the court must stay the proceedings until arbitration is held if the court determines there is an agreement in writing to submit to arbitration and the proceeding filed with the court is subject to arbitration under this agreement. 9 U.S.C. § 3 (2006). See AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986).

"The standard for demonstrating arbitrability is not high.  The court's only role when presented with a question of arbitrability is to determine (1) whether a valid arbitration agreement exists and (2) whether the scope of the parties' dispute falls within that agreement."  <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126,1130 (9th Cir. 2000).  Therefore, this court will determine whether an arbitration agreement exists, and if so, whether HSBC was able to assign this agreement to Harris.  The court must then determine whether plaintiffs' claims are covered by the arbitration agreement.

### Existence of a Valid Arbitration Agreement

Whether a valid arbitration agreement exists is a question of contract law.  <u>R.J. O'Brien & Assocs., Inc. v. Pipkin</u>, 64 F.3d 257, 260 (7th Cir.1995); <u>AT & T Technologies, Inc. v. Communications Workers</u>, 475 U.S. 643, 648 (1986).  State law principles apply to contract formation.  <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938 (1995).  Harris argues that plaintiffs are Wisconsin residents; HSBC, the issuer of the credit cards, is located in Nevada and plaintiffs remit payment to payment centers located in Indiana and Maryland.  Because there is a question of which state law, we turn to the UCC which Wisconsin, Nevada, and other states in question base their contract law.

The Seventh Circuit has held contracts offered on a take-it-or-leave-it basis are valid agreements for the applicability of the FAA.  <u>Metro East Center for Cond. and Health v. Quest Comm. Int'l, Inc.</u>, 294 F.3d 924, 926 (7th Cir. 2002).  The basic elements of any contract formation are offer, acceptance and consideration.  Restatement (Second) of Contracts § 17 (1981).  "A vendor, as master of the offer, may invite acceptance by conduct, and may propose limitations on the kind of conduct that constitutes acceptance. A buyer may accept by performing the acts the vendor proposes to treat as acceptance." <u>ProCd, Inc. v. Zeidenberg</u>, 86 F.3d 1447, 1452 (7th Cir. 1996).

Furthermore, the Seventh Circuit held where an agreement was sent with a product, including informing customers they had thirty days to return the goods if they did not agree to the terms, plaintiffs had accepted the arbitration agreement by keeping the product beyond the thirty days. Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997). See also id. at 1149 (discussing "[p]ractical considerations [that] support allowing vendors to enclose the full legal terms with their products").

In opposing Harris' motion, plaintiffs allege they never signed any agreement and therefore cannot be held to the arbitration agreement. Harris alleges plaintiffs accepted the terms of the arbitration agreement by their conduct. Boston Store changed the cardholder agreement including adding the arbitration provision in contest. Boston Store sent a notice of the agreement changing and noted the agreement became effective October 15, 1999 unless a card holder would complete and mail an enclosed post card stating he or she did not accept the terms. Furthermore, this notice stated even if the postcard was properly completed and returned, any purchase using the credit card on or after the effective date became an agreement to accept the changes.

Harris alleges these notices were inserted in monthly statements between August 16, 1999 and September 15, 1999. If a statement was not being sent to that cardholder, the notice was sent by direct mail. Neither Schneider nor Tickanen's account have a notation that this notice was returned as undeliverable. Therefore, as in Hill, plaintiffs accepted the agreement by their failure to take affirmative action to not accept the agreement.

Plaintiffs allege Harris cannot prove plaintiffs accepted this agreement because the affidavit of Nancy Jasinski is inadmissible hearsay. The evidence Harris puts forth to show Schneider and Tickanen received this notice, which informed plaintiffs they were acquiescing to the agreement through use of their credit card, is Nancy Jasinski's statements in her affidavit and copies of the agreement, notification, and notice sent to plaintiffs according to policy. Plaintiffs contend Nancy

Jasinksi lacks personal knowledge. Interestingly, although plaintiffs challenge the competency of Jasinksi to proffer this evidence, plaintiffs fail to submit any personal evidence disputing that they received any of the documents attached to Jasinski's affidavit.

The Federal Rules of Evidence require a witness only to testify to a matter in which he or she has personal knowledge. Fed. R. Evid. 602. However, personal knowledge of a company's policies can be established by virtue of a person's position within that company. <u>Prudential Ins. Co. of Am. v. Lehman</u>, No. 99-4304, 2001 WL 138922, n.5 (N.D. Ill. Feb. 16, 2001). <u>See also</u> <u>Johnston v. Arrow Financial Services, LLC</u>, No. 06-0013, 2006 WL 2710663 (N.D. Ill. Sept. 15, 2006). (Motion to Strike Declaration of Executive Assistant denied where he was familiar with signatory company's policies and procedures and where he had examined the company's records regarding plaintiffs.) In this case, Nancy Jasinksi is the Senior Manager of Recovery, which includes researching account histories of credit card holders, and as such, she is in a position to know corporate policies regarding these matters.

In regard to this type of evidence, Rule 902(11) Fed. R. Evid. requires that evidence of a regularly conducted activity must be offered by a qualified person, which includes any person making the record or a custodian of the record, who must certify that the record:

    1) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

    2) was kept in the course of the regularly conducted activity; and

    3) was made by the regularly conducted activity as a regular practice.

Nancy Jasinksi is currently Senior Manager of Recovery of Saks, Inc, which, at the time this lawsuit was filed, owned Boston Store. It is the regular activity of Boston Store to make and keep business records in the course of regularly conducted activity. Attached to Nancy Jasinksi's affidavit are copies of agreements, notices, and billing statements that were sent to plaintiffs.

Furthermore, an exception to the hearsay rule includes records made in the regular practice of business activity. Fed. R. Evid. 803(6). The Rules of Evidence also state "[e]vidence that a matter is not included in the …records…kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter" is not excluded by the hearsay rule. Fed. R. Evid. 803(7). Therefore, Nancy Jasinski's affidavit, including the fact that Boston Store's records did not indicate plaintiffs mailings were ever returned, is admissible.

Based on this evidence, it is clear there was a valid arbitration agreement between plaintiffs and Boston Store and later HSBC. The court now turns to the question of whether this valid arbitration agreement applies to the dispute between the plaintiffs and Harris.

### HSBC's Right to Assign Arbitration Agreement

Plaintiffs allege any arbitration agreement was never effective as to them. Furthermore, plaintiffs allege Harris was a non-signatory to the arbitration agreement and therefore cannot claim rights under Boston Store's contract with plaintiffs.

"[A]ssignee… stands in the shoes of the assignors." Pollice v. National Tax Funding, L.P., 225 F.3d 379, 414 (3d Cir. 2000). In the case at hand, Boston Store sent plaintiffs a notice indicating HSBC assumed all Boston Store's previous credit card accounts and HSBC reserved the right to assign the debt at any time, without notice. The notice also indicated if one did not agree with the terms, card holders should return a postcard indicating this; furthermore, any purchases made on their account after the effective date, October 15, 1999, would constitute acceptance of these changes. The court concludes that the plaintiffs consented to the terms of the agreement by their conduct in making purchases after this date.

Furthermore, a non-signatory can compel arbitration by equitable estoppel. Hoffman v. Deloitte & Touche, LLP, 143 F. Supp. 2d 995, 1004-05 (N.D. Ill. 2001).

> [E]quitable estoppel allows a non-signatory to compel arbitration in two distinct circumstances. First, equitable estoppel applies when the signatory "must rely on the terms of the written agreement in asserting its claim" against a non-signatory. Thus, "when each of a signatory's claim [sic] against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate." Second, equitable estoppel also applies "when the signatory raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."

Id. (citing MS Dealer Service Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999) (internal citations omitted)).

Here, plaintiffs submit that neither of the foregoing exceptions apply. Plaintiffs state that they do not refer to any part of the contract between plaintiffs and Boston Store/HSBC in their complaint and therefore, contend they do not rely on the terms of the written agreement to assert their claims. Furthermore, plaintiffs argue that the second exception does not apply either because they have not alleged Boston Store was party to any wrongdoing.

Plaintiffs rely on Brantley v. Republic Mortgage Insurance Co., 424 F.3d 392 (4th Cir. 2005), as a more appropriate comparison to the case at hand. Southstar, Brantleys' mortgagee, required plaintiffs to obtain private mortgage insurance. Southstar and the Brantleys also entered into a separate arbitration agreement. Brantleys obtained this through Republic Mortgage Insurance Company. When the Brantleys filed suit against Republic under the Fair Credit Reporting Act, Republic Mortgage sought to impose the arbitration agreement between Brantleys and Southstar. The Brantley court, in citing MS Dealer Service Corp., 177 F.3d at 947, determined that "mere existence of a loan transaction requiring plaintiffs to obtain mortgage insurance cannot be the basis for finding their federal statutory claims, which are wholly unrelated to the underlying mortgage agreement, to be intertwined with that contract." Id. at 396. Therefore, equitable estoppel was not applicable under exception one. Furthermore, because the Brantleys had not alleged any acts of collusion or misconduct, equitable estoppel could not be found on the second exception either. Id.

The present case is easily distinguished. First, there are not two different products being offered. In Brantley, plaintiffs obtained a mortgage from Southstar and private mortgage insurance from Republic Mortgage. Here, plaintiffs obtained credit from Boston Store, which was then assigned to HSBC, and finally to Harris. Second, plaintiffs in Brantley did not rely on the contract between Southstar and themselves to assert any claims. Here, plaintiffs are alleging Harris sent out debt collection letters with the wrong creditor listed, Boston Store, when in fact HSBC owned the debt at that time and Harris was the debt collector. If this is true, plaintiffs are acknowledging the existence of a debt, which was assigned to Harris. Plaintiffs cannot acknowledge the debt and ignore the concomitant arbitration agreement. Plaintiffs are "presuming the existence of the written agreement[,]" as in Hoffman. Therefore, plaintiffs should be estopped from denying part of the agreement and asserting only part of the agreement was assigned to Harris.

The arbitration agreement properly applies to Harris as it does to plaintiffs. This court now examines whether plaintiffs' claims are such that can be arbitrated.

### Determining Scope of Arbitration Agreement

"We begin with the oft-cited rule that 'any doubts as to whether [a plaintiff's] claims fall within the scope of the agreement must be resolved in favor of arbitration." Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex.1995) (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hospital, 460 U.S. at 24-25. See, e.g., Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583 (1960).

The burden of establishing that Congress intended to preclude arbitration of statutory claims rests on the party seeking to avoid arbitration. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S.

20, 26 (1991). Federal statutory claims are subject to arbitration unless Congress expressed its intent to preclude. Id. Congressional intent can only be demonstrated through statutory text or legislative history or through "inherent conflict" between arbitration and statutes underlying purpose. Id. Furthermore, parties should be held to agreements to arbitrate "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).

Finally, a non-signatory can compel a signatory to arbitrate under an agreement where question of arbitration is itself subject to arbitration: "[A] signatory to a contract containing an arbitration clause… cannot now disown its agreed to obligation to arbitrate *all* disputes, including the question of arbitrability." Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205, 211 (2nd Cir. 2005).

Plaintiffs allege any arbitration agreement does not apply to a FDCPA violation arising from a debt collection letter sent by a non-signatory to the contract. The burden rests on plaintiffs here to show Congress intended to preclude litigation. Plaintiffs argue FDCPA precludes Boston Store or HSBC from being liable because FDCPA does not impose liability on creditors, only debt collectors. Therefore, plaintiffs argue the court cannot compel arbitration because their claim cannot include Boston Store or HSBC. The court has previously set forth the reasons that this argument fails; namely, because a valid arbitration provision existed and this provision was assigned to Harris as part of a larger agreement to assign plaintiffs' debts. Plaintiffs' claims arise from their debt being assigned to Harris; plaintiffs cannot rely on the agreement to make their claim, yet deny the arbitration provision contained therein. Furthermore, plaintiffs do not present any statutory language, legislative history, or show "inherent conflicts" that would establish that Congress intended to preclude arbitration in alleged violations under the FDCPA.

The arbitration provision included in plaintiffs agreement gives the broadest meaning possible to "claim":

> A. **'Claim'** means all claims, disputes, controversies between you and us [which was earlier defined as Card issuer and its affiliates] arising from or relating to (1) your Agreement (including but not limited to the validity, scope, and enforceability of this arbitration provision), your Account, or any balance in your Account and (2) any prior agreement you may have had with us relating to your Account or any balance in your Account. Claim will be given the broadest possible meaning. For example and without limitation, Claim includes all claims, based on contract, tort, fraud, and other intentional torts, statute, common law, and equity arising from or related to (I) advertisements and promotions about your Account or Accounts generally, goods, services financed under your Account, and the terms of financing, (II) the Application for your Account, (III) the terms of or the disclosures in your Agreement, and (IV) the monthly statements for your Account.

Therefore, this provision indicates plaintiffs agreed to arbitrate *any* claims they had against the signatory and assignees. There is no reason to believe this agreement does not include violations under the FDCPA.

Plaintiffs also contend Harris has waived its right to arbitrate by waiting too long to bring its Motion to Compel Arbitration. Plaintiffs rely on a Seventh Circuit case in which the defendant had removed the proceedings to federal court and then waited ten months before filing a motion to compel arbitration. The court held that the defendant had waived its right to compel arbitration. Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabintery, Inc., 50 F.3d 388 (7th Cir. 1995). The court in Cabinetree found "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." Id. at 390. However, courts from Seventh Circuit have distinguished cases where defendant has raised arbitration in its first responsive pleading. Halim v. Great Gatsby's Auction Gallery, Inc., No. 03-8414, 2004 WL 434191, *21 (N.D. Ill. 2004); see also Clayton v. Clear Channel Metroplex, Inc., No. 00-0511, 2001 WL 1163883 (W.D. Wis. 2001); USW v. Uniroyal Goodrich Tire Mfg, No. 02-391, 2003 WL

-11-
Case 2:05-cv-00935-AEG   Filed 10/20/06   Page 11 of 12   Document 40

23960525 (N.D. Ind. 2003). Here, Harris raised the possibility of arbitration as an affirmative defense in its original answer. Plaintiffs then filed an amended complaint and in response, Harris filed a motion to compel arbitration. Therefore, Harris acted expeditiously in asserting arbitration, and did not waive its right to arbitration.

## CLASS ACTION ALLEGATIONS DENIED

Plaintiffs Tickanen and Schneider seek class certification. Harris contends the arbitration provision does not allow class action suits. In view of the fact this court is referring this case to arbitration, this issue can be addressed in that forum.

## CONCLUSION

Plaintiffs entered into a valid arbitration agreement with Boston Store. This agreement was then formed between HSBC and Plaintiffs. HSBC assigned its rights to Harris. Plaintiffs are estopped from denying the arbitration agreement. All claims raised by plaintiffs should be addressed by arbitration.

**IT IS THEREFORE ORDERED** that the defendant's motion to cite additional authority is **granted.**

**IT IS FURTHER ORDERED** that Harris's Motion to Compel Arbitration is **granted**. All proceedings against Helen Tickanen and Barbara Schneider are thus stayed pending completion of arbitration. This case is resumed as to plaintiff John Theurich, and the stay of discovery regarding plaintiff Theurich and the defendant is vacated. The parties shall submit a joint proposal no later than **October 31, 2006,** setting forth discovery and motion deadlines.

Dated at Milwaukee, Wisconsin this 20th day of October, 2006.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge